UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Walter Omar Salgado Miranda,<br><br>*Petitioner*,<br><br>v.<br><br>Anthony J. LAROCCO, in his official capacity as warden of the Nassau Correctional Center; William JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Todd LYONS, in his official capacity as Acting Director U.S. Immigration and Customs Enforcement; Kristi NOEM in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security; and U.S. Immigration and Customs Enforcement.<br><br>*Respondents*. | Case No. _____<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

1.      Walter Omar Salgado Miranda is a twenty-three (23) year old from Honduras, who fled his country after gang members shot and injured him.  In Honduras, he lived solely in the care of his paternal grandparents since he was two (2) years old. Fleeing the violence of the gangs as well as the abandonment and neglect of his parents, Walter Omar Salgado Miranda arrived in the United States on or about July 18, 2022, at the age of twenty (20).  Since his arrival, he lived with his paternal aunts, one of whom was appointed his Guardian of the Person as he was under the age of twenty (21). Walter Omar Salgado Miranda applied and was granted Special Immigrant Juvenile ("SIJ") status, meaning that a court found—and the Department of

1

Homeland Security ("DHS") agreed—that it is not in his best interest to be returned to his home country of Honduras.

2.      On the afternoon of March 3, 2026, while presenting at his probationary visit in Nassau, he was handed over to Immigration and Customs Enforcement ("ICE"). Walter Omar Salgado Miranda has been held at Nassau Correctional Facility and without the ability to communicate with his attorney, who has attempted to schedule legal visits with her client without success. The Enforcement Removal Operations ("ERO") platform through which such visits are set-up states: "your client is currently in a detention facility where they are not accepting ERO E-File Legal Visitation scheduling."  Respondents arrested and detained him, even though he cannot lawfully be removed to the dangerous conditions in Honduras.

3.      Walter Omar Salgado Miranda's detention and attempted removal violate his statutory and constitutional rights. In recognition of the vested interests arising from a grant of SIJ status and in deference to the underlying statutory process Congress envisioned, for years, the government has largely shielded SIJ recipients from removal. Respondents decision to summarily detain Walter Omar Salgado Miranda without notice or explanation violated his procedural due process rights and ICE's own regulations. His ongoing detention—particularly without any individualized review—serves no lawful purpose and runs afoul of the substantive and procedural due process protections of the Fifth Amendment, the Administrative Procedure Act ("APA"), the *Accardi* doctrine, and the Immigration and Nationality Act ("INA") and its implementing regulations.

2

4.	Walter Omar Salgado Miranda respectfully asks this Court to hold that his continued detention is unlawful and order his immediate release from custody, or in the alternative, hold a bond hearing. He also respectfully asks that this Court order Respondents not to transfer him outside of the District for the duration of this proceeding in order to preserve the Court's jurisdiction.

**PARTIES**

5.	Petitioner-Plaintiff (hereinafter "Petitioner") Walter Omar Salgado Miranda is a citizen of Honduras and a resident of New York City. He entered the United States as an unaccompanied minor on July 18, 2022, seeking safety from gang violence in Honduras, and was subsequently granted special immigrant juvenile ("SIJ") status. Walter Omar Salgado Miranda had been at liberty until he was abruptly detained by ICE on the morning of March 3, 2026. He is presently in the custody and direct control of Respondents and their agents.

6.	Respondent Anthony J. LAROCCO is named in his official capacity as warden of the Nassau Correctional Center. He is an immediate custodian of Petitioner who is detained there.

7.	Respondent William Joyce is named in his official capacity as the Acting Field Office Director of the New York Field Office for Immigration and Customs Enforcement within the United States Department of Homeland Security. In this capacity, he is also responsible for the administration of immigration laws and the execution of detention and removal determinations and is a legal custodian of Petitioner. Respondent Joyce's address is New York ICE Field Office Director, 26 Federal Plaza, 7th Floor, New York, New York 10278.

8.  Respondent Todd Lyons is sued in his official capacity as Acting Director of U.S. Immigrations and Customs Enforcement. As the Acting Director of ICE, Respondent Lyons is a legal custodian of Petitioner.

9.  Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a); routinely transacts business in the Eastern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a legal custodian of the Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, 800 K Street N.W. #1000, Washington, District of Columbia 20528.

10.  Respondent U.S. Department of Homeland Security ("DHS") is an executive department of the United States Government headquartered in Washington, D.C. DHS is the parent agency of Immigration and Customs Enforcement.

11.  Respondent U.S. Immigration and Customs Enforcement ("ICE") is a component agency of DHS and is responsible for enforcing federal immigration law, including the detention and removal of immigrants.

## JURISDICTION AND VENUE

12.  This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), Art. I § 9, cl. 2 of the U.S. Constitution (Suspension Clause), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1651 (All Writs Act), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

13.    Federal district courts have jurisdiction to hear habeas claims brought by noncitizens challenging the lawfulness of their detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (recognizing habeas jurisdiction over immigration detention challenges); *Zadvydas*, 533 U.S. at 687 (same); *Tran v. Mukasey*, 515 F.3d 478, 482 (5th Cir. 2008) (same).

14.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (e)(1) because Walter Omar Salgado Miranda is detained within the Eastern District of New York, his immediate physical custodian is located within this District, and a substantial part of the events giving rise to this petition occurred and continue to occur within this District.

## FACTUAL ALLEGATIONS

15.    Walter Omar Salgado Miranda is a 23-year-old who fled Honduras in 2022 after his parents had abandoned him.

16.    In July 2023, because Walter Omar Salgado Miranda's parents  had abandoned him, an aunt began the family court process to be appointed his  guardian. On August 4, 2023 she received orders from the Nassau County Family Court, appointing her as Walter Omar Salgado Miranda's guardian, and finding that his parents had abandoned him within the meaning of New York State law, and that it is not in his best interest to return to Honduras, where he would have no place to live, would be subject to severe financial hardship and gang violence, and would not be able to continue his education. Exhibit A (Special Findings Order). In granting the orders, the Family Court acknowledged the safety and opportunities available to Walter Omar Salgado Miranda in the United States.

17.    On August 11, 2023, Walter Omar Salgado Miranda petitioned for SIJ status with the United States Citizenship and Immigration Services[1] (USCIS).

18.    On December 6, 2023, USCIS granted Walter Omar Salgado Miranda's petition for SIJ status. Exhibit B (SIJ Approval Notice).

19.    On April 22, 2023, after Walter Omar Salgado Miranda finished working and while he was driving home, he was arrested, charged with misdemeanor DWI, and released.

20.    On the afternoon of March 3, 2026, while presenting at his probationary visit in Nassau, he was handed over to Immigration and Customs Enforcement ("ICE"), who is detaining him at the Nassau Correctional Facility.

21.    The government has detained a person with approved SIJ status who cannot be lawfully removed to dangerous conditions in Honduras, as Congress expressly designed SIJ status to allow such children to remain in the United States to pursue lawful permanent residence. *See* 8 U.S.C. § 1255(h) (deeming SIJ youth "paroled" for adjustment); 8 U.S.C. § 1227(c) (waiving specified removal grounds for SIJ); *cf.* 8 U.S.C. § 1155; 8 C.F.R. § 205.2 (revocation only with notice, reasons, and an opportunity to respond). Detaining Walter Omar Salgado Miranda now therefore has no permissible purpose.

---

[1] USCIS is the sub-agency of the Department of Homeland Security with exclusive jurisdiction over SIJ petitions, including both granting and revoking SIJ status. *See* 8 C.F.R. §§ 204.11(d); 205.2. Other DHS sub-agencies, such as ICE and Customs and Border Patrol, can neither grant nor revoke SIJ status. *Id.*

6

## LEGAL FRAMEWORK

### Special Immigrant Juvenile Status

***A. SIJ Status Provides a Pathway to Permanent Status for Certain Vulnerable Young People***

22.    In 1990, Congress created SIJ status to protect vulnerable immigrant children and provide them a pathway to citizenship. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the INA); Special Immigrant Status, 58 Fed. Reg. 42843, 43844 (Aug. 12, 1993) ("This rule alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future."). Since 1990, Congress has amended the INA multiple times to expand the protections of SIJ status, most recently in 2008, through the Trafficking Victims Protection Reauthorization Act, Pub. L. 110-457, § 235(d), 122 Stat. 5044 (2008).

23.    To be granted SIJ status, youths like Walter Omar Salgado Miranda must first "satisfy[] a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 163 (3d Cir. 2018). Specifically, the INA provides that those eligible for SIJ designation, as relevant here, are noncitizen youth who are present in the United States; who have been declared dependent on a state juvenile court; who cannot be reunified with one or more parents because of abuse, neglect, or abandonment; and for whom it has been determined that it is not in their best interest to return to their country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

7

24.    Crucially, a noncitizen youth is eligible for SIJ status only if he or she is "*present* in the United States." 8 U.S.C. § 1101(a)(27)(J) (emphasis added). This requirement makes perfect sense in light of the purpose of the SIJ statute. SIJ status is predicated on a state court finding that the youth cannot be safely reunited with parent(s), nor safely sent back to their country of origin. The design of this program, then, "show[s] a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for LPR status." *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (abrogated on other grounds).

25.    Youth can apply for SIJ status upon receipt of a state court order finding they cannot be safely reunited with parent(s) nor safely sent back to their country of origin. The application process includes submitting a Form I-360 SIJ Petition to USCIS, along with the predicate state court order and other supporting evidence. *See* 8 C.F.R. § 204.11(b). USCIS then considers the application and supporting documentation to determine whether to exercise its statutory "consent function" to approve the petition. *See* 8 U.S.C. § 1101(a)(27)(J)(iii). By exercising its statutory consent function to grant SIJ status, the agency recognizes the state court's determinations, including that the child's return to their country of origin would be contrary to their best interests. 8 U.S.C. § 1101(a)(27)(J)(iii).

26.    SIJ status may be revoked only for what the Secretary of Homeland Security deems "good and sufficient cause." 8 U.S.C. § 1155; 8 C.F.R. § 205.2. According to USCIS regulations, such revocation must be made upon notice to the youth in question, who must be permitted the opportunity to submit evidence in opposition to the revocation. *See* 8 C.F.R. § 205.2. If status is ultimately revoked, the youth is entitled to notice and the opportunity to appeal the decision. *See* 8 C.F.R. § 205.2(c) & (d). Revocation of a SIJ petition may only be performed by a USCIS officer authorized to approve such petition in the first instance. *See* 8 C.F.R. §

8

205.2(a).

27.     The main benefit of SIJ status—and indeed, its core purpose—is that it confers on vulnerable young people like Walter Omar Salgado Miranda the right to seek lawful permanent resident status while remaining in the United States, through a process called adjustment of status. *See* 8 U.S.C. § 1255(h).

28.     To facilitate this process, Congress removed numerous barriers to adjustment of status for SIJ status beneficiaries through amendments to the SIJ provisions in 1991 and again in 2008. For example, SIJ youth are "deemed . . . to have been paroled into the United States" for the purposes of adjustment of status. 8 U.S.C. § 1255(h)(1). Further, Congress exempted SIJ youth from many common inadmissibility grounds and created a generous waiver of many of the non-exempted inadmissibility grounds. 8 U.S.C. § 1255(h)(2). And, Congress explicitly provided that certain grounds for removal "shall not apply to a special immigrant described in section 1101(a)(27)(J) of this title [the SIJ statute] based upon circumstances that existed before the date the [noncitizen] was provided such special immigrant status." 8 U.S.C. § 1227(c).

29.     Although SIJ renders youth eligible to apply for adjustment, they can only do so when a visa is immediately available to them. 8 U.S.C. § 1255(h). However, there is an annual limit on visas available to SIJ beneficiaries. 8 U.S.C. § 1153(b)(4). And since 2016, the number of SIJ beneficiaries has surpassed the supply of available visas for most countries, leaving what has been estimated to be more than 100,000 young people in a backlog, waiting to apply for a green card.

30. Despite the immediate unavailability of visas, waitlisted SIJ beneficiaries are the same vulnerable young people that the SIJ statute was designed to protect. The fact that no visa is currently available because a numerical limit has been reached changes nothing about their eligibility determination by USCIS, or Congress's intent that they be afforded a pathway to LPR status and, eventually, citizenship. These are the same individuals whom state courts have determined cannot safely be reunited with their parent(s) or returned to their home country.

31. Taken together, the structure of the SIJ program—including the requirement that recipients remain in the United States to move forward in the process, the grant of parole for the purpose of adjustment, and the waiver of grounds of inadmissibility and removability— evinces Congress' intent that SIJ status recipients remain safely in the United States until they can adjust to become LPRs.

### B. Detention Without An Individualized Custody Determination

32. Congress has authorized civil detention of noncitizens in removal proceedings for specific, non-punitive purposes. See *Jennings v. Rodriguez*, 138 S.Ct. 830, 833 (2018); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). For individuals who are "arriving" in the U.S. or who are subject to expedited removal because they have been present under two years and meet certain other requirements, mandatory detention is authorized by 8 U.S.C. § 1225(b). For individuals who are in removal proceedings following entry without inspection and who are not subject to mandatory detention based on criminal history, detention is normally authorized by 8 U.S.C. § 1226(a). Individuals with a final order of removal may be subject to mandatory or discretionary detention pursuant to 8 U.S.C. § 1231(a).

33.     Detention serves only two legitimate purposes: mitigating flight risk and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020).

34.     Beginning in May 2025, the Board of Immigration Appeals and the Department of Justice have promulgated a series of decisions and policies to attempt to reclassify individuals who entered the country without inspect as subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). See Matter of Q. Li, 29 I. & N. Dec. 66, 69 (BIA 2025); Matter of Yajure Furtado, 29 I&N Dec. 216 (BIA 2025). As a result, individuals like Petitioner who entered the U.S. without inspection are now not eligible for bond absent a federal-court order in a habeas case.

35.     Respondents' position on their own detention authority contradicts decades of settled precedent, which holds that individuals who entered the U.S. without inspection are governed by 8 U.S.C. § 1226(a). Regulations promulgated nearly thirty years ago provide that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination" under Section 1226. 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Until recently, Respondents consistently adhered to this interpretation. See, e.g., Matter of Garcia-Garcia, 25 I&N. Dec. 93 (BIA 2009); Matter of D-J-, 23 I&N. Dec. 572 (A.G. 2003); see also Transcript of Oral Argument at 44:24–45:2, Biden v. Texas, 597 U.S. 785 (2022) (No. 21-954) ([Solicitor General]: "DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended.").

36.     Since this shift, "hundreds of district court decisions have rejected

11

Respondents' expansive interpretation of Section 1225." Molina v. DelLeon, No. 25-CV-06526 (JMA), 2025 WL 3718728, at *3 (E.D.N.Y. Dec. 23, 2025) (collecting cases); Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.").

37.    In November, a district court in California also held in a series of decisions that DHS's position on bond eligibility is unlawful with respect to "all noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3288403, at *1 (C.D. Cal. Nov. 25, 2025); see also Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *1, *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). That judgement should be binding on Respondents nationwide, but instead Respondents have directed immigration judges to ignore the decision. On February 18, the court granted plaintiffs' motion to enforce the judgment and excoriated the government for "far cross[ing] the boundaries of constitutional conduct." Lazaro Maldonado Bautista et al. v. Ernesto Santacruz Jr et al., 5:25-cv-01873-SSS-BFM at *10 (C.D.Cal. February 18, 2026).

12

38.        Respondents' actions in detaining individuals like Petitioner without an individualized custody determination violates the right to due process. A person's liberty cannot be infringed upon without "adequate procedural protections." Zadvydas, 533 U.S. at 690-91. The Second Circuit has held that the Matthews v. Eldridge balancing test is applicable to determine the adequacy of process in the context of civil immigration confinement. Velasco Lopez, 978 F.3d at 851 (citing Mathews v. Eldridge, 424 U.S. 319 (1976)). This test requires process sufficient to mitigate the risk of erroneous deprivation of a liberty interest.

39.        Numerous courts in this district and others across the country have held that these detentions violate not only the Immigration and Nationality Act but also the due-process clause.  See Padilla Molina v. Deleon, No. 25-CV-06526, 2025 WL 3718728, at *5 (E.D.N.Y. Dec. 23, 2025); Hyppolite v. Noem, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); Artiga v. Genalo, No. 25-cv-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); J.U. v. Maldonado, No. 25-cv-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); Guerrero v. Noem, No. 25-cv-5881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025)); Lopez Benitez v. Francis, 795 F. Supp. 3D 475, (S.D.N.Y. August 13, 2025); Cuy Comes v. DeLeon, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *5 (S.D.N.Y. Nov. 14, 2025); Valdez v. Joyce, No. 25 CIV. 4627 (GBD), 2025 WL 1707737 at *4 (S.D.N.Y. June 18, 2025).

## **IMMIGRATION DETENTION LEGAL FRAMEWORK**

40.        The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

41.    First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

42.    Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

43.    Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

44.    This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

45.    Detention under Section 1226(a) is discretionary, not mandatory; the government "may release the [noncitizen] on—(A) a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole[.]" 8 U.S.C.§ 1226(a)(2)(A)–(B).20.

46.    Under the Section 1226 framework, release is appropriate where a noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) ("8U.S.C. § 1226(a) and its implementing regulations require ICE officials to make anindividualized custody determination"); *see also Lopez Benitez v. Francis*, No. 25-CV-5937,2025 WL 2371588, at *20 (S.D.N.Y. Aug. 13, 2025).21. If, after an individualized

consideration, ICE chooses to detain the noncitizen pursuant to Section 1226(a) pending removal proceedings, the individual may ask for a bond redetermination hearing before the immigration judge. 8 C.F.R. § 1003.19.

47.    In contrast with Section 1226, which applies to "certain [noncitizens] already in the country," *Jennings*, 583 U.S. at 289 (emphasis added), Section 1225(b) governs detention of noncitizens seeking entry into the United States (i.e., "applicants for admission"). In other words, Section 1225(b) mandates detention for those noncitizens subject to it, and they are not eligible to be considered for release.

48.    Section 1225(b)(2)(A) applies to a narrower subset of applicants for admission.  It provides that, "if the examining officer determines that a[] [noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).

49.    For decades after the enactment of detention provisions at § 1226(a) and § 1225(b)(2), people who entered the country without inspection but who were already in the United States at the time of an ICE arrest were detained under § 1226(a) rather than § 1225(b)(2). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). As the Supreme Court has made clear, "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" Jennings, 583 U.S. at 287-89.

15

50.      On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy[2] that rejected well-established understanding of the statutory framework and reversed decades of practice. The policy claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A), regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

51.      On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

---

[2] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

52.     Since Respondents adopted their new policy, almost every district court that has confronted this issue "has concluded that the government's [new] position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice." *Rodriguez,* 2025 WL 2782499, at \*1 (collecting 22 recent cases finding against the government's interpretation);[3] *see also Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) (finding that the government cannot point to an Article III court that has adopted their expansive construction of § 1225(b)(2)); *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) (same).

---

[3] *See*, *e.g., Lopez Benitez v. Francis*, 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Barbosa Da Cunha v. Moniz,* 6:25-cv-06532 (MAV) (W.D.N.Y. Oct. 20, 2025), *Aceros, v. Kaiser, et al.*, 25-CV-06924 (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Maldonado Vazquez v. Feeley*, 2:25-CV-01542-RFB (EJY), 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Romero v. Hyde*, CV 25-11631 (BEM), 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Martinez v. Hyde*, CV 25-11613 (BEM), 2025 WL 2084238 (D. Mass. July 24, 2025) (denying government's motion for reconsideration); *Gomes v. Hyde*, No. 1:25-CV-11571 (JEK), 2025 WL 1869299 (D. Mass. July 7, 2025); *dos Santos v. Lyons*, No. 1:25-CV-12052 (JEK), 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Aguilar Maldonado v. Olson*, --- F. Supp. 3d ----, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Beltran Barrera v. Tindall*, 3:25-CV-541 (RGJ), 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycraft*, 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Reyes v. Raycraft,*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, 25-CV-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Chogllo Chafla v. Scott*, 2:25-CV-00437 (SDN), 2025 WL 2688541 (D. Me. Sept. 21, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-CV-01789-ODW (DFMX), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (granting individualized bond hearings on ex parte motion for temporary restraining order after finding likelihood of success); *Mosqueda v. Noem*, 5:25- CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025) (same); *Kostak v. Trump*, CV 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same); *Garcia Jimenez v. Kramer*, No. 4:25CV3162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) (granting relief from stay of bond order pending BIA appeal); *Mayo Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025) (same).

17

53.     Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. The government's recently adopted position also ignores the text of § 1225(b)(2). For § 1225(b)(2) to apply, an examining immigration officer must make three separate determinations: that a person is 1) an applicant for admission; 2) seeking admission; and 3) not clearly and beyond a doubt entitled to be admitted. Section 1225(a)(1) defines an "applicant for admission" as [a noncitizen] present in the United States who has not been admitted or who arrives in the United States." The term "seeking admission . . . necessarily implies some sort of present-tense action." *Martinez v. Hyde*, No. CV 25-11613 (BEM), 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). The government's interpretation that all inadmissible individuals are "seeking admission" within the meaning of § 1225(b) renders the meaning of the term identical to the statutorily defined term "applicant for admission." Such an interpretation violates rule of surplusage and negates the plain meaning of text.

54.     The legislative history further shows that § 1226(a) was intended to "restate[] the [then-]current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (quoting H.R. Rep. No. 104-469, at 229 (1996)). Indeed, shortly after IIRIRA's enactment, the former Immigration and Naturalization Service and the Executive Office for Immigration Review ("EOIR," which houses the Immigration Courts and BIA) issued an interim rule to implement the statute that expressly stated: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

55.     Thus, for almost 30 years, all participants in the immigration system have

understood that people arrested inside the United States generally fall within § 1226 for detention purposes and therefore, unless subject to bars not applicable here, are required to receive a bond hearing upon request—even if they initially entered the country without permission. Such a longstanding and consistent interpretation "is powerful evidence that interpreting the Act in [this] way is natural and reasonable." *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part on "over 60 years" of government interpretation and practice to reject government's new proposed interpretation of the law at issue).

56.     The LRA amendments to § 1226 that occurred just this year, § 119, 139 Stat. 3, also confirmed widespread understanding that individuals not admitted or paroled were still detained pursuant to § 1226(a) if they were detained while already in the United States. Congress expressly included inadmissible individuals who have been convicted of certain crimes as subject to mandatory detention under § 1226(c)(1)(E). Again, if every noncitizen who was present without being admitted was already subject to mandatory detention under § 1225(b)(2), Congress would have had no reason to pass an entirely new provision in order to make those individual subject to mandatory detention under § 1226(c)(1)(E) if they committed one of the listed crimes.

57.     Petitioner was arrested after 3.5 years of continuous presence in the United States, not while "seeking admission." Further, any pending asylum application or other forms of relief are not legally considered a process of "seeking admission." *See Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 n.7 (S.D.N.Y. Aug. 13, 2025); *Garcia-Mendez v. Lynch*, 788 F.3d. 1058 (9th Cir. 2015).

19

58.     Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.  His detention is governed by § 1226(a), and his continued detention under § 1225(b)(2) is in excess of statutory authority and *ultra vires.*

**Noncitizens' Procedural Due Process Rights**

59.     The Due Process Clause of the Fifth Amendment entitles noncitizens to due process of law.  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  As clearly enunciated by the Supreme Court, the protection of the Due Process Clause applies to noncitizens in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) (citations omitted).

60.     Stated simply, "while [DHS] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process."  *Ceesay v. Kurzdorfer*, No. 25-CV-267, 2025 WL 1284720, at *1 (W.D.N.Y. May 2, 2025) (citing *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954)).

61.     Further, noncitizens are entitled to procedural due process protections, even in the face of policy shifts between administrations.  While a "new administration can change the rules . . . it cannot change them and make up new rules as it goes along when the new rules abridge constitutional rights." *Velasquez v. Kurzdorfer*, No. 25-CV-493, 2025 WL 1953796, at *14 (W.D.N.Y. Jul. 16, 2025).

62.     In the context of immigration detention due process claims, the Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge* to determine what due process requires. These factors are: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

63.     In light of a noncitizen's due process rights and the procedural rights conferred by Section 1226(a) and the implementing regulations, a decision to detain a noncitizen requires an individualized determination as to the noncitizen's risk of flight and danger to the community. *See Velesaca v. Decker*, No. 20-CV-1803, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020); *Lopez Benitez*, 2025 WL 2371588, at *10; *Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025).

64.     Under the *Mathews* rubric, freedom from imprisonment, physical restraint, or other forms of government custody is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Lopez Benitez*, 2025 WL 2371588, at *9 ("[Petitioner] invokes the most significant liberty interest there is—the interest in being free from imprisonment") (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)) (citing *Hamdi*, 542 U.S. at 529); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. Nov. 22, 2019) (noncitizens in immigration custody had an arguably even greater liberty interest in remaining out of detention than criminal parolees who required due process protection).

65.     With respect to the second *Mathews* factor, given the strong liberty interest at

21

stake, the Fifth Amendment's guarantee of due process requires at least some notice and an opportunity to be heard before a person can be placed in immigration detention. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025). Further, due process requires that "notice must be afforded within a reasonable time and in such manner as will allow [noncitizens] to actually seek . . . relief[.]" *Id.*

66. For the third *Mathews* factor, "the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate government purpose." *Velasco Lopez*, 978 F.3d at 854. The recognized government interests in immigration detention are "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Absent evidence in the record that a noncitizen is dangerous, and in situations when the noncitizen has appeared for immigration proceedings, district courts have held that the government cannot demonstrate a significant interest in their detention. *See Lopez Benitez*, 2025 WL 2371588, at *13; *Valdez*, No. 25-CV-4627, 2025 WL 1707737, at *4 (S.D.N.Y. Jun. 18, 2025).

67. Recent decisions by federal courts in various jurisdictions confirm that due process requires the government to make individualized determinations to detain noncitizens and give them notice and a meaningful opportunity to be heard when challenging their detention. Further, if a noncitizen does not receive individualized consideration pre-deprivation, his due process rights are irrevocably violated, and no amount of procedure provided post-detention can remedy that violation. *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *14 ("Given the nature of the constitutional violation Mr. Lopez Benitez sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment before detaining him—any post-deprivation review by an immigration judge would be inadequate."); *see also Chipantiza-Sisalema*, 2025 WL

22

1927931, at *3 (finding bond "hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.") (citation modified); *Kelly*, 2025 WL 2381591, at *3 (same).

68.     As a result, courts have ordered a noncitizen's immediate release where their pre-detention due process rights have been violated. Here, immediate release is appropriate because Respondents have not—and cannot—show that they conducted an individualized determination regarding Petitioner before his summary arrest. Respondents' reliance on Section 1225(b)(2)'s mandatory detention provision establishes their decision to forego any evaluation of whether Petitioner's circumstances would otherwise warrant detention under Section 1226, which provides the sole lawful authority for detaining individuals residing in the U.S.

69.     In the alternative, Petitioner seeks at a minimum a bond hearing at which Respondents bear the burden of justifying his continued detention by clear and convincing evidence. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

## CLAIMS FOR RELIEF

## CLAIM I

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT OF THE CONSTITUTION (SUBSTANTIVE DUE PROCESS); ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. §§ 702, 706

70.     Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71.     The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

72.     Petitioner has a fundamental interest in liberty and being free from official restraint. His detention is not related to any legitimate government interests, in violation of the substantive due process protections of the Fifth Amendment.

## CLAIM II

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT OF THE CONSTITUTION (PROCEDURAL DUE PROCESS); ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. §§ 702, 706

73.     Petitioner repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

74.     The procedural due process guarantee of the Fifth Amendment requires that individuals be provided notice and an opportunity to be heard before being deprived of liberty or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

24

75.     The Due Process Clause entitles Walter Omar Salgado Miranda to meaningful process assessing whether his detention is justified. Walter Omar Salgado Miranda's re-arrest and detention without an opportunity to contest his detention in front of a neutral adjudicator after he had been living and going to school in the United States for years provide insufficient process and violates the Due Process Clause of the Fifth Amendment of the Constitution.

## CLAIM III

### VIOLATION OF THE FOURTH AMENDMENT OF THE CONSTITUTION; ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. §§ 702, 706

76.     Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.     The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has consistently recognized that immigration arrests and detentions are "seizures" within the meaning of the Fourth Amendment. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1044 (1984) (acknowledging that deportation proceedings are civil, but the Fourth Amendment still applies to the "seizure" of the person).

78.     Walter Omar Salgado Miranda was first detained by federal immigration officials at the border of the United States. The government exercised its discretion under the INA to release him and his mother into the United States on their own recognizance while they pursued immigration relief. At the time of Walter Omar Salgado Miranda's arrest, he had been living at liberty pursuant to a determination by federal immigration authorities to release him on his own recognizance.

79.     The government lacked reliable information of changed or exigent

25

circumstances that would justify his arrest after federal immigration authorities had already decided he could pursue his claims for immigration relief at liberty.

## CLAIM IV

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 702, 706

80.    Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

81.    Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

82.    Respondents' re-detention of Petitioner is arbitrary and capricious and in excess of statutory jurisdiction because his removal is not reasonably foreseeable in light of his SIJS status which entitles him to an opportunity to apply for adjustment.

83.    Respondents failed to articulate a reasoned explanation for their decision in light of all available evidence and failed to consider all the aspects of the problem as well as obvious, less-restrictive alternatives to custody.

84.    Respondent's current construction of its detention authority, including the treatment of Petitioner as subject to mandatory detention, violates the INA and therefore the APA.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

a.      Assume jurisdiction over this matter;

b.      Enjoin the Respondents from transferring Petitioner away from the jurisdiction of this District and enjoin his removal pending these proceedings;

c.      Declare that Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment; the Fourth Amendment; the Administrative Procedure Act; the *Accardi* Doctrine; and the Immigration and Nationality Act and implementing regulations;

d.      Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody without restraints on his liberty;

e.      Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

f.      Grant such other and further relief as law and justice require.

Dated: March 5, 2026                    Respectfully submitted,
      Brooklyn, N.Y.

                                        PAÚL CAMARENA
                                        */s/ Paúl Camarena*
                                        Paúl Camarena, Esq.
                                        26 Court St., No. 409
                                          Brooklyn, NY 11242
                                        (312) 493-7494
                                        paulcamarena@paulcamarena.com
                                        NY Atty. Reg. No. 3991981

                                        *Attorneys for Petitioner-Plaintiff*

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner the events described in this Petition and reviewed relevant documentation. Based on those discussions and review, upon information and belief, I hereby verify that the factual statements made in the Verified Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

/s/ Astrid H. Avedissian Esq.

Astrid H. Avedissian

*Attorney for Petitioner*

28